20839

In the Matter of John Laverne REAVES.

(250 S. E. (2d) 329)

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Richard B. Kale, Jr., A. Camden Lewis, George C. Beighley* and *Perry M. Buckner,* Columbia, *for complainant.*

*Saunders M. Bridges,* Florence, *for respondent.*

December 27, 1978.

*Per Curiam:*

In this disciplinary proceeding, John L. Reaves, an attorney of Loris, South Carolina (hereafter the respondent) is charged with professional misconduct in two general areas in that: (1) he solicited business from various persons individually and in concert with one Patrick Joseph Ryan, a doctor of medicine practicing at Loris, all in violation of Disciplinary Rule 2-103(A), (B), (C);[1] and, (2) that he loaned money to clients in violation of Disciplinary Rule 5-103(B).[1] It is further charged that this conduct tends to pollute the administration of justice in violation of Section 5(d) of this Court's Rule on Disciplinary Procedure.

The respondent answered the complaint by denying any solicitation on his part and alleged that the lending of small amounts of money to clients (which he admitted) is inconsequential and does not constitute an offense unless the

---

[1] See Supreme Court Rule 32, Code of Professional Responsibility.

lawyer actually acquires an interest in the outcome of specific litigation.

The Hearing Panel found that the extensive testimony taken before it clearly demonstrated that the respondent solicited the cases of certain clients, who testified concerning the circumstances of such solicitation. As to each client who testified adversely to respondent, the defense attempted to show that the witness had personal hostility towards respondent or that the testimony was inspired by his local political enemy.

The most critical witness in this proceeding was Agnes Mary Ryan, the former wife of Patrick Joseph Ryan, M.D., respondent's alleged "partner" in the solicitation scheme. Her testimony involves the period of time when she was living with her husband and was performing nursing and office management work in his medical office. The Hearing Panel summarizes her testimony as follows:

Their [Dr. and Mrs. Ryan] first contact with respondent concerned a problem her husband had with drunken driving for which respondent was able to assist. A "relationship" soon developed between her husband and respondent. She would not refer to it as a "racket" because it was more of a "gentlemanly thing". It was expected that Dr. Ryan would refer patients to respondent and during treatment would keep certain patients in the hospital for a designated number of days or weeks if respondent expected a large settlement. Dr. Ryan would pad his bills to reflect serious injuries. Respondent advanced them money on several occasions when they were having financial problems.

The Panel in its Report found that respondent had improperly solicited employment in seven specific cases. In only two of these cases was Dr. Ryan not involved as a participant. The Panel further found that "respondent was engaged in a definite reciprocal referral arrangement with Dr. Patrick Ryan which scheme amounted to solicitation."

While it will serve no useful purpose to detail the circumstances of each of the cases involved, the following excerpts from the Report of the Panel are illustrative of the method employed:

■ Mrs. Georgia Mae Jones testified with respect to a 1975 automobile accident. She was a patient of Dr. Ryan at the Loris Hospital. Dr. Ryan talked with her about respondent who subsequently appeared at the hospital and asked to represent her.

■ Mrs. Lillian Mae Hickman testified with respect to a 1975 automobile accident and stated that Dr. Ryan would not treat her until she went to respondent's office. Thereafter Dr. Ryan treated her.

The remaining two cases found by the Panel to constitute improper solicitations, involved one Drawt Grate, an employee of respondent. Grate stated that he was employed primarily on respondent's farm, but on cross-examination conceded that he did run some errands related to the respondent's law practice, and that he had gone on occasion to accident scenes to make measurements. He testified that the truck which he drives has a two-way radio, that respondent's law office has a similar radio, and that respondent's personal automobile has a third such radio. He testified that these radios were used, however, solely for the farming business.

The voluminous evidence in this case amply supports the finding by the Panel and adopted by the Board that the respondent was engaged in a scheme of solicitation in clear violation of Disciplinary Rule 2-103(A), (B), (C).

The second charge made against the respondent is that of loaning money to clients in violation of Disciplinary Rule 5-103(B). Respondent has admitted the practice of making loans to his clients. These advancements to clients were not confined to a permissible guarantee of the expenses of litigation including such items as court costs and expenses of

preparing a case for trial, but rather, at least in one instance, the funds were used for a vacation by his client. Disciplinary Rule 5-103(B) provides:

(B) While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

We are in agreement with the finding of the Panel, concurred in by the Board, that respondent violated Disciplinary Rule 5-103(B), and in so doing reject respondent's contention that it is a necessary element of such violation that the lawyer acquire a proprietary interest in the cause of action itself as proscribed by 5-103(A). It is our opinion that 5-103(B) defines an offense independent of that stated in 5-103(A), and that the type of loans made by respondent is clearly prohibited by its provisions.

When the case came to be originally heard before this Court on January 9, 1978, the respondent filed a Return with Addendum, dated December 16, 1977. The respondent's Addendum stated that he had received a letter "in the course of mail" on December 9, 1977, from a crucial witness in the case against him, Agnes Mary Ryan, in which Mrs. Ryan stated that her testimony before the Hearing Panel was untrue, and she wished to rescind it. The Complainant, in turn, submitted a statement from Mrs. Ryan stating that respondent had in fact unexpectedly visited her home in Newton, Massachusetts, on December 9, 1977, and influenced her to make the statement. She further stated that her testimony before the Hearing Panel was true, and that she did not desire to contradict it.

Respondent's counsel at the above-mentioned hearing before this Court, stated that his client had previously given

him an affidavit to the effect that respondent had received the unsolicited letter in the course of the mail, but that the respondent now admitted that he had gone to Massachusetts and personally obtained it. Upon this admission being disclosed to the Court, respondent's counsel requested that the case be remanded for the purpose of having his client examined by a psychiatrist.

On January 12, 1978, this Court issued an interlocutory order remanding the case to the Board for further inquiry into the respondent's mental health and any other matter deemed appropriate by the Board, and temporarily suspended respondent from the practice of law. As a result of the remand, a supplemental report has been filed with this Court. The Panel caused a psychiatric examination to be made of the respondent, and no mental impairment of significance was found by the psychiatrist.

The Panel in its original report recommended the indefinite suspension of respondent. This recommended sanction was concurred in by the Board in its original certification to this Court. In its supplemental report, after the matter had been remanded to it, the Panel again recommended that respondent be indefinitely suspended, but such recommended sanction was not concurred in by The Executive Committee of the Board.[2] The Executive Committee voted to accept the Panel's findings of fact and conclusions of law; its independent recommendation as to sanction was disbarment.

We have in previous cases given the Bar a clear mandate that the kind of conduct engaged in by respondent, as convincingly demonstrated by the record before us, will not be tolerated. See *In Re Bloom,* 265 S. C. 86, 217 S. E. (2d) 143 (1975). We have previously condemned the practice of

---

[2] In the interim between the two certifications of this case to the Supreme Court, the Rule of Disciplinary Procedure was amended so as to substitute the Executive Committee of the Board as the reviewing authority in place of the Full Board. *See* 4B(1), Rule on Disciplinary Procedure.

using runners and touters to acquire clients. *In Re Craven,* 267 S. C. 33, 225 S. E. (2d) 861 (1976). Such offenses can no longer be deemed anything other than serious breaches of the Code of Professional Responsibility. This record chronicles a pervasive scheme of solicitation in violation of Dsciplinary Rule 2-103(A), (B), (C).

We have hereinabve determined that the conduct of respondent in the loans made to certain clients constituted a violation of Disciplinary Rule 5-103(B). In addition to violating the above Rule, this conduct obviously served as a form of solicitation by respondent for future cases and new clients.

As previously stated, respondent admitted that he did provide his counsel with a false affidavit in regard to the alleged receipt of an unsolicited letter from Witness Ryan "in the course of mail". This affidavit led his counsel, a lawyer of unquestioned integrity, to file with this Court a Return with Addendum that was misleading and untrue. The Panel has correctly stated that "such misconduct cannot be countenanced of one who is an officer of the Court." We deem such misconduct a circumstance of additional aggravation in our consideration of this case. The respondent failed to appear before this Court at its final hearing of this matter despite diligent efforts by his counsel to assure his presence.

The findings and recommendations of The Executive Committee of the Board of Commissioners on Grievances and Discipline are abundantly supported by the record. Accordingly it is ordered that the respondent, John L. Reaves, be, and he is hereby, disbarred from the practice of law in this State, and he shall within five (5) days surrender to the Clerk of the Supreme Court the certificate heretofore issued by the Court admitting him to practice.