671 So.2d 1293 (1995)
The MISSISSIPPI BAR
v.
ATTORNEY HH.
No. 93-BA-00609-SCT.
Supreme Court of Mississippi.
December 14, 1995.
As Modified on Denial of Rehearing March 21, 1996.
Charles J. Mikhail, Pascagoula, Michael B. Martz, Jackson, for Appellant.
William Liston, Liston, Lancaster, Winona, for Appellee.
En Banc.
BANKS, Justice, for the Court:
In this case we deal with the troublesome issue of an attorney who feels compelled to lend an impecunious personal injury client sums necessary to personal maintenance pending resolution of the injury claim. We eschew the temptation to follow the direction of our sister state to the west, Louisiana, and enforce our standards as written by subjecting the offending lawyer to a private reprimand.

*1294 I.
On January 23, 1992, the Mississippi Bar Association filed a formal complaint against attorney HH alleging that he violated Mississippi Rules of Professional Conduct 1.5(a) and (c), 1.7(b), 1.8(e), 1.8(j), 7.3, 8.4(c) and 8.4(d). The complaint tribunal dismissed with prejudice the portion of the Bar's complaint dealing with Rules 1.5(a) and (c), 1.7(b), and 7.3. After a hearing pertaining to violations of the remaining Rules, the tribunal found that HH violated Rules 1.8(e) and (j) by guaranteeing loans for his client. Despite its findings, the tribunal decided not to discipline or sanction HH. Rather, in a written opinion, the Tribunal urged this Court to determine whether Rule 1.8(e) should be strictly enforced. The Bar appealed and raised the following issue for review by this Court:
Whether the Tribunal erred in failing to impose discipline on HH after finding that he violated Rule 1.8(e) and (j)?
HH raised the following issue on cross-appeal:
Whether Rule 1.8(e) and (j), insofar as said Rules prohibit advancements by a lawyer to his client of necessary and essential living and medical expenses during the course of litigation in order to maintain the viability of the client's claim are constitutionally impermissible for the reason that such prohibition denies the client meaningful access to the judicial process and the court system?

II.
On November 17, 1987, the client sustained substantial personal injuries when his motorcycle was struck by an automobile. Two days after the accident, a nurse told the client's girlfriend that she knew someone who might be able to assist her if she needed legal assistance. The nurse told the girlfriend that she should contact a certain private investigator. The girlfriend phoned the PI who eventually gave her the names of several law firms, including the law firm of HH. No mention was made as to who would pay the PI for his investigation. HH's law firm later paid for the PI's investigatory work.
The girlfriend later signed a contingency fee contract employing HH as the client's attorney and subsequently, after conversations with the client and his father, HH filed a suit on the client's behalf. He also gave the client's father ten to fifteen dollars on two occasions "so that the kid would have a magazine or if he needed cigarettes or something." Due to the substantial personal injuries that the client sustained, his left leg was amputated, he was hospitalized for twenty-six days, and his medical and hospital expenses soared.
Before the client was released from the hospital, HH arranged for him to return to a wheelchair-accessible house in Gulfport, rather than to the trailer he rented for $150 monthly. The PI assisted the girlfriend in setting up living quarters for the client by taking her to different stores to purchase things for the house. HH testified that after the arrangements were made, the client's family members expressed concern as to how the client would make the rental payments on the house. Thereafter, HH asked the girlfriend for a "budget, what you are going to need to keep your lights on and food in your refrigerator." HH subsequently guaranteed several loans, totaling $4,190.16, for the client to pay for a prosthesis, as well as other medical and personal living expenses. He also gave the girlfriend $600 to pay child support to the client's wife, whom he was in the process of divorcing at the time of his accident, and to purchase Christmas gifts for the girlfriend's children.
In September of 1988, HH settled the client's claim. At that time, the client repaid the loans and interest that HH had guaranteed for him at Hancock Bank. Nearly two years later, the client filed a complaint against HH with the Bar. In the complaint, the client expressed dissatisfaction that HH was receiving periodic payments from his check every month. At the hearing before the tribunal, the client testified that he also was upset that child support payments were taken from his monthly check. This caused friction between him and the girlfriend, whom he had since married. Additionally, the client testified that he was angry because *1295 he couldn't live off of the $400 a month receipts from the settlement. He went on to say, however, that he was no longer dissatisfied with the settlement because "well, I still can't live off of $400 a month, but I'm satisfied with the way it is because that's the only way I'll get my bill paid." He stated that he no longer had a complaint against HH.

III.
This Court has exclusive inherent jurisdiction over attorneys, and their licenses to practice law. Mississippi State Bar v. Attorney D, 579 So.2d 559, 561 (Miss. 1991); Mississippi State Bar v. Nichols, 562 So.2d 1285, 1287 (Miss. 1990); Mississippi State Bar v. Nixon, 494 So.2d 1388, 1389 (Miss. 1986); Mississippi State Bar v. Phillips, 385 So.2d 943, 944 (Miss. 1980). "Even though this Court convenes a Tribunal to make findings of fact and recommendations to this Court, this Court addresses the case de novo." Nichols, 562 So.2d at 1287; See Levi v. Mississippi State Bar, 436 So.2d 781, 782 (Miss. 1983). This Court has the independent authority to reassess the punishment meted out by the tribunal and increase or decrease the punishment as it deems proper. Myers v. Mississippi State Bar; 480 So.2d 1080, 1094 (Miss. 1985). There is no standard as to what punishment for particular misconduct ought to be. Goeldner v. Mississippi State Bar Ass'n, 525 So.2d 403, 407 (Miss. 1988). Cases are considered on a case by case basis. Id.

a.
The Bar contends that the Tribunal erred in failing to discipline or sanction HH after finding that he had violated Rule 1.8(e) and (j). HH, however, argues that under Rule 8(b) and Rule 8.6, that imposing discipline was within the discretion of the Tribunal.
Rule 8(b) of the Rules of Discipline provides:
At the conclusion of the hearing, upon majority vote, the tribunal shall render a written opinion incorporating a finding of fact and a judgment which may: (i) Exonerate the accused attorney and dismiss the Formal Complaint; or (ii) Publicly or privately reprimand the attorney; or (iii) Suspend the attorney with or without probation for a fixed period of time and may specify conditions precedent to reinstatement; or (iv) Disbar the attorney.
Rule 8.6 of the Rules of Discipline states:
No discipline shall be imposed except upon clear and convincing evidence. After a final hearing on the merits, the opinion of the Tribunal may provide the following: (i) Exonerate the accused attorney and dismiss the Formal Complaint: (ii) Publicly or privately reprimand the attorney ... (iii) Suspend the attorney with or without probation for a fixed period of time, and may specify conditions precedent to reinstatement... . (iv) Disbar the attorney.
The use of the word "shall" means that the tribunal has no discretion in meting out discipline once the Bar establishes beyond clear and convincing evidence that an attorney has violated the Rules of Professional Conduct. See Miss. State Bar v. Attorney D, 579 So.2d 559, 561 (Miss. 1991) (citing Rule 8(b) and holding that the tribunal does not have the authority to impose an informal admonition upon an attorney). It follows that HH's argument that the imposition of discipline upon him was within the discretion of the tribunal is without merit.

b.
The Bar contends that the advancement of personal living expenses by a lawyer to his client violates the Rules of Professional Conduct and should be prohibited. The Bar cites MRPC 1.8(e) and (j), as well as Kentucky Bar Association v. Mills, 808 S.W.2d 804 (Ky. 1991), Shea v. Virginia State Bar, 236 Va. 442, 374 S.E.2d 63 (1988), In re Brown, 298 Or. 285, 692 P.2d 107 (1985), In re John Laverne Reaves, 272 S.C. 213, 250 S.E.2d 329 (1978), and In re a Member of the State Bar of Arizona Karl Nile Stewart, 121 Ariz. 243, 589 P.2d 886 (1979). The Bar also contends and the Tribunal found that HH violated Rule 1.8(e) and (j) which provide:
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment *1296 of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client; and
(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may: (1) acquire a lien granted by law to secure the lawyer's fee or expenses; and (2) contract with a client for a reasonable contingent fee in a civil case.
HH does not contend that he did not violate Rule 1.8(e) and (j). Rather, he contends that the Rule should not be interpreted so as to prohibit the advancement of necessary medical and living expenses to an indigent client. In the alternative, HH contends that should this Court find that the advancement of necessary medical and living expenses to indigent clients violates Rule 1.8(e) and (j), the Rule should be either rescinded or amended to conform with the mandates of the Constitution of the State of Mississippi. HH relies on Louisiana State Bar Association v. Edwins, 329 So.2d 437, 444-447 (La. 1976).
The question of whether the advancement of funds beyond court costs violates Rule 1.8(e) and (j) is an issue of first impression for this Court. Other courts have addressed this question and the majority of them have found that such conduct is violative of the Rules of Professional Conduct. Only one court has approved of the advancement of funds to indigent clients during legal representation. The Louisiana Supreme Court held that where an attorney advances funds to an indigent client for medical and living expenses, the advancement does not run afoul of the rules. See Edwins, 329 So.2d 437 (La. 1976).
The Bar points to cases from other jurisdictions in which courts have enforced the prohibition against advancing personal and living expenses or the guaranteeing of financial assistance.
In Kentucky Bar Association v. Mills, the Supreme Court of Kentucky found that the attorney violated DR 5-103(B) when he advanced $6,400 to his client and her daughter. 808 S.W.2d at 805. The Mills Court stated: "The purpose of the rule is to insure that the lawyer does not acquire a financial interest in the litigation; that the lawyer's judgment remain unaffected by matters such as whether the client will be able to repay a loan; and that in the final analysis, major decisions such as acceptance or rejection of settlement offers be made by the client. Whether Respondent agrees with [the provisions of the rules], this Rule has been adopted by this Court to govern the conduct of Kentucky lawyers and Respondent is obliged to observe it." Id. at 805.
Also on point is Shea v. Virginia State Bar, 236 Va. 442, 374 S.E.2d 63, 64 (1988) in which the Supreme Court of Virginia held that the attorney violated DR 5-103(B) by advancing more than $6,000 to pay his client's creditors for such personal expenses such as rent, electrical bill, automobile expenses, and other household expenses. Id. 374 S.E.2d at 64. It was undisputed in Shea that the attorney violated DR 5-103(B). Id. The attorney, however, argued on appeal that the 90-day suspension imposed by the Virginia State Bar Disciplinary Board was too harsh. Id.
Before reaching the question of the appropriateness of Shea's sanction, the Shea Court noted "there is an unmistakable undercurrent in Shea's argument to the effect that DR 5-103(B) is really not that important. The suggestion is that it prevents attorneys from being helpful and compassionate to clients who find themselves in dire financial straits during the course of litigation. The question which lurks below the surface of Shea's arguments is this: "Why can't a lawyer help a client who needs financial help so long as the client pays the money back from the proceeds of the litigation? The short answer to that question is that the disciplinary rule says that such conduct is improper." Id.
Like the Mills Court, the Shea Court stated, "[T]he broader answer is that the rule in question is intended and designed to maintain the independent judgment of counsel in the representation of clients. If a client owes his attorney money, the attorney may *1297 have his own pocketbook in mind as he handles the litigation. That attorney might settle for an amount sufficient to cover the loan to his client, while foregoing the risk of a trial where his client could recover a larger amount or lose everything. The policy embodied in DR 5-103(B) is that a lawyer simply should not face this risk to independent judgment." Shea, 374 S.E.2d at 64-65.
Another treatment of the issue is found in In re Brown, 298 Or. 285, 692 P.2d 107 (1984). In that case, after failing to convince her lawyer to lend her money, Anderson went to attorney Brown and asked him to lend her money. Id. Brown lent her thirty-five dollars. Id. At the time of that loan, the woman was not represented by Brown, however, her mother was one of Brown's former clients. Id. On the same day, the woman returned to the office of the attorney who refused to lend her money. Id. 692 P.2d at 108. The woman told that attorney that she wanted Brown to represent her because "Brown had agreed to lend her money against the settlement or judgment in the event [her case] went to trial." Id. The attorney, who was fired, drafted a letter restating the woman's statement to him and she signed it.
Brown later filed suit on behalf of Anderson. Id. After Brown began representing the woman, he lent her an additional $157.40, $50, and $118.60 on three separate occasions. Id. Thereafter, the first attorney contacted by Anderson filed a complaint with the Oregon State Bar. Id. After an investigation into the allegation, the Bar filed a formal complaint against Brown. Id. In Brown, the Bar argued that by making an advance to a client for personal living expenses the attorney acquires an interest in the subject matter of the litigation. Id. 692 P.2d at 111. Brown argued that he made the loans to Anderson but that they had no connection with her claim for personal injuries and property damages against the owner of the other vehicle. Id. 692 P.2d at 110. Moreover, Brown argued that the loans were to be repaid and were repaid from a "personal injury protection type of coverage" that Anderson had with her employer. Id. As such, Brown argued that he did not acquire an interest in the litigation. Id.
The Brown Court held that under the facts of the case, Brown acquired an interest in the litigation by advancing money to Anderson for her personal use. The court appeared to adopt the reasoning of Ethics Opinion No. 67, which "speaks to `acquiring an interest in the subject matter of the litigation' and does not limit the prohibition to an interest in the final settlement or verdict in the case. The subject matter of the potential litigation in this case included all of the matters arising out of the collision between Anderson's vehicle and the other vehicle." Id. 692 P.2d at 111.
In In re John Laverne Reaves, the attorney admitted the practice of making loans to his clients. In at least one instance, money given by the attorney to a client was used to fund a vacation for the client. Reaves, 250 S.E.2d at 330. The Reaves Court held that the loan violated DR 5-103(B). Id.
Finally, in In the Matter of a Member of the State Bar of Arizona Karl Nile Stewart, an attorney representing a client in a personal injury action gave the client fifty dollars in cash as a loan to cover living expenses, and on two other occasions the attorney made advancements to the client totaling $215. Id. 589 P.2d at 887. The Arizona Supreme Court held that such advancements constituted the acquisition by a lawyer of a proprietary interest in a cause of action. Id. 589 P.2d at 888. The Court reasoned that "if an attorney acquires an interest in the outcome of a suit in addition to his fees, it can lead to the attorney placing his own recovery ahead of his client." Id.
In contrast to these expressions, in Louisiana State Bar Association v. Edwins, 329 So.2d 437, 445 (La. 1976), the Louisiana Supreme Court concluded that it was "unwilling to hold that the spirit or the intent of the disciplinary rule is violated by the advance or guarantee by a lawyer to a client (who has already retained him) of minimal living expenses, of minor sums necessary to prevent foreclosures, or for necessary medical treatment."
*1298 In Edwins the attorney advanced financial assistance to a client during his representation of the client in a seamen's suit. The Edwins Court approved the advancements, stating "in interpreting the disciplinary rule, we should do so in the light of the canon and the ethical considerations on which it is based. At least two of the ethical considerations point out policies which permit lawyerclient fee arrangements or advances when they represent the only practicable method by which a client can enforce his cause of action. If an impoverished person is unable to secure subsistence from some source during disability, he may be deprived of the only effective means by which he can wait out the necessary delays that result from litigation to enforce his cause of action." Id. at 446.
The Louisiana Court went on to state that "we do not believe that any bar disciplinary rule can or should contemplate depriving poor people from access to the court so as effectively to assert their claim." Id. at 446. The court noted that advancements for medical and personal expenses of this nature are "more akin to the authorized advance of `expenses of litigation' than to the prohibited advances made with improper motive to buy representation of the client or by way of advertising to attract other clients. We note that the disciplinary rule permitting the advance of `expenses of litigation' includes certain instances as illustrative, but that it does not clearly exclude other expenses similarly necessary to permit the client his day in court, such as arguably are the present." Id.
We decline the invitation to follow the reasoning of the Edwins Court at this time. We are sensitive to the concern over leveling the playing field for injured parties. We also recognize the logical inconsistency of asserting that a lawyer's interest in recovering moneys lent to a client for living and medical expenses would affect his judgment while the prospect of losing possibly vast sums advanced in the form of litigation expenses would not. Our concern is that unregulated lending to clients would generate unseemly bidding wars for cases and inevitably lead to further denigration of our civil justice system. We invite the bench, bar and public to suggest a mechanism for dealing with the problem of the impecunious civil litigant with a viable and valuable claim. In the meantime we enforce our standards of conduct as written.

IV.
For the foregoing reasons it is the judgment of this Court that attorney HH be subjected to a private reprimand which shall be rendered by this Court and included in his permanent disciplinary record with this Court.
PRIVATE REPRIMAND FOR ATTORNEY HH TO BE INCLUDED IN HIS PERMANENT DISCIPLINARY RECORD AS RENDERED BY THIS COURT.
PRATHER and SULLIVAN, P.JJ., and SMITH and MILLS, JJ., concur.
DAN M. LEE, C.J., dissents with separate written opinion joined by PITTMAN and JAMES L. ROBERTS, Jr., JJ.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, C.J., and JAMES L. ROBERTS, Jr., J.
DAN M. LEE, Chief Justice, dissenting:
Today this Court is subjecting attorney HH to a private reprimand. Because I believe attorney HH acted in the best interest of his client, by doing the humane thing in light of his economic hardship, and that punishment is inappropriate under the particular circumstances of this case, I respectfully dissent.
As the majority notes, the question of whether the advancement of funds beyond court costs violates Mississippi Rules of Professional Conduct ("MRCP") 1.8(e) and (j) is a matter of first impression for this Court. In cases involving disciplinary matters, this Court reviews the entire record, findings and conclusions of the Complaint Tribunal and renders such an order as we deem appropriate. In view of the particular facts and circumstances involved in the case sub judice, I would judge this matter in accordance with the reasoning expressed by our neighboring state of Louisiana in Louisiana State *1299 Bar Association v. Edwins, 329 So.2d 437 (La. 1976).
In Edwins the Louisiana Supreme Court was "unwilling to hold that the spirit or the intent of the disciplinary rule is violated by the advance or guarantee by a lawyer to a client (who has already retained him) of minimal living expenses, of minor sums necessary to prevent foreclosures, or of necessary medical treatment." Edwins, 329 So.2d at 445. The court noted that advancements for medical and certain personal expenses, as in the case sub judice, are "more akin to the authorized advance of `expenses of litigation' than to the prohibited advances made with the improper motive to buy representation of the client or by way of advertising to attract other clients." Id. at 446. I realize that, without some form of assistance, a person of meager means may be deprived of access to the courts and the opportunity to litigate their claim because they may not be able to endure the financial hardships caused by the delays of litigation. Further, because of a dire financial situation, a person might be forced to settle his claim for an inadequate amount.
Although I do believe in and strongly support the MRPC, based on the facts and circumstances presented in the case sub judice, I do not believe attorney HH's actions were unethical or violative of MRPC 1.8(e) or (j). Accordingly, I respectfully dissent.
PITTMAN and JAMES L. ROBERTS, Jr., JJ., join this opinion.
McRAE, Justice, concurring in part and dissenting in part:
I agree with the majority that Attorney HH's actions constitute a violation of our disciplinary rules as written, primarily Rule 1.8(e) of the Mississippi Rules of Professional Conduct. However, it is time for this Court to realize that strict construction of Rule 1.8(e), which would prohibit the advancement of even minimal living or medical expenses to an indigent client during the course of litigation, puts an attorney in the untenable position of having to choose between doing what is morally proper and what is "ethically" correct pursuant to Rule 1.8. Accordingly, we should adopt the position taken by the Louisiana court in Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La. 1976), allowing limited financial assistance to clients so that the doors of our courts can remain open to all.
In Edwins, the Louisiana court was asked to consider whether an attorney, who had advanced his seaman client minimal living expenses as well as medical expenses unrelated to the litigation because the client was living below the poverty level while awaiting the outcome of his Jones Act claim, was acting in violation of Louisiana Ethical Considerations analogous to our Rule 1.8. As the Edwins court explained,
If an impoverished person is unable to secure subsistence from some source during disability, he may be deprived of the only effective means by which he can wait out the necessary delays that result from litigation to enforce his cause of action. He may, for reasons of economic necessity and physical need, be forced to settle his claim for an inadequate amount.
We do not believe any bar disciplinary rule can or should contemplate depriving poor people from access to the court so as effectively to assert their claim. Cf, Canon 2: "A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available." Nor do we see how a lawyer's guarantee of necessary medical treatment for his client, even for a non-litigation related illness, can be regarded as unethical, if the lawyer for reasons of humanity can afford to do so.
The advances and guarantees here made are, in our opinion, more akin to the authorized advance of "expenses of litigation" than to the prohibited advances made with improper motive to buy representation of the client or by way of advertising to attract other clients. We note that the disciplinary rule permitting the advance of "expenses of litigation" includes certain instances as illustrative, but that it does not clearly exclude other expenses similarly necessary to permit the *1300 client his day in court, such as arguably are the present.
Edwins, 329 So.2d at 446.
Ostensibly, Rule 1.8 is intended to insure that an attorney does not acquire a financial interest in litigation; that his judgment remains unclouded by the client's ability to repay a loan; and that major decisions such as the acceptance or rejection of a settlement offer are not colored by the client's financial obligation to the attorney. Nevertheless, we make an exception to the prohibition against providing financial assistance to clients by allowing for the payment or advancement of court costs and litigation expenses pursuant to Rule 1.8(e)(1) and (2). However, when litigation expenses can exceed $250,000.00 to $500,000.00, depending on the nature of the case, it is ludicrous to suggest that advance of such costs does not create a proprietary interest in the case and the loan of a minor sum to supplement an indigent client's medical and living expenses does.
I do have concerns that attorneys might use financial assistance or promises thereof as a bargaining chip to compete for a client's business or to induce a litigant with a particularly appealing and potentially lucrative case to abandon his attorney for one who might provide him with the funds to enjoy a higher standard of living than he might otherwise expect during the course of litigation. That, as I see it, would be a violation of the Rules and would even provide the original attorney with grounds for a cause of action for tortious interference with contract and expose the second attorney to severe disciplinary actions, including suspension or financial penalties.
Advancements of funds for living expenses should be limited to medical expenses or the necessities, occasioned only by the client's inability to pay. In Edwins, the Louisiana court found that the advancement of living expenses did not constitute a violation of professional responsibility, so long as:
(a) the advances were not promised as an inducement to obtain professional employment, nor made until after the employment relationship was commenced; (b) the advances were reasonably necessary under the facts; (c) the client remained liable for repayment of all funds, whatever the outcome of the litigation; and (d) the attorney did not encourage public knowledge of this practice as an inducement to secure representation of others. See: Annotation, Attorneys  Clients' Expenses, 8 A.L.R.3d 1155 (1966); Strelow, Loans to Clients for Living Expenses, 55 Calif.L.Rev. 1419 (1967).
Edwins, 329 So.2d at 446. To simply put a client on a generous expense account without setting such parameters would invite breaches of professional conduct. However, allowing the advancement of living expenses following Edwins guidelines would go a long way to enable poor people better access to our courts.
I agree that Attorney HH violated Rule 1.8(e). However, we must recognize that, because of the tremendous costs of litigation, a lawyer has a proprietary interest in a case the moment he advances expenses for any lawsuit. Placing the Edwins restrictions on the advancement of living expenses to clients would serve a humanitarian purpose without crossing the bounds of impropriety.
DAN M. LEE, C.J., and JAMES L. ROBERTS, Jr., J., join this opinion.