797 So.2d 931 (2001)
In re Ex parte APPLICATION OF G.M. for Approval of Payment of Personal Living Expenses and Reasonable and Necessary Medical Expenses.
No. 2000-M-00165-SCT.
Supreme Court of Mississippi.
April 19, 2001.
*932 Confidential Attorney for Petitioner.
Michael B. Martz, Jackson, for Respondent.
EN BANC.
PITTMAN, Chief Justice, for the Court:
¶ 1. Today we are for the first time asked to apply the recent amendments to Rule 1.8(e) of the Mississippi Rules of Professional Conduct. The Standing Committee on Ethics held in this matter that the rule absolutely prohibits advances of premiums to maintain a client's health insurance. In that conclusion it was incorrect, and the matter must be remanded for further consideration in the light of the guidance set forth in this opinion. Rule 1.8(e), as amended, authorizes attorneys, under limited circumstances and with express restrictions, to advance certain costs and expenses on behalf of clients in need. The rule now provides:
(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings, except that:
1. A lawyer may advance court costs and expenses of litigation, including but not limited to reasonable medical expenses necessary to the preparation of the litigation for hearing or trial, the repayment of which may be contingent on the outcome of the matter; and
2. A lawyer representing a client may, in addition to the above, advance the following costs and expenses on behalf of the client, which shall be repaid upon successful conclusion of the matter.
a. Reasonable and necessary medical expenses associated with treatment for the injury giving rise to the litigation or administrative proceeding for which the client seeks legal representation; and
b. Reasonable and necessary living expenses incurred.
The expenses enumerated in paragraph 2 above can only be advanced to a client under dire and necessitous circumstances, and shall be limited to minimal living expenses of minor sums such as those necessary to prevent foreclosure or repossession or for necessary medical treatment. There can be no payment of expenses under paragraph 2 until the expiration of 60 days after the client has signed a contract of employment with counsel. Such payments under paragraph 2 cannot include a promise of future payments, and counsel cannot promise any such payments in any type of communication to the public, and such funds may only be advanced after due diligence and inquiry into the circumstances of the client.
Payments under paragraph 2 shall be limited to $1,500 to any one party by any lawyer or group or succession of lawyers during the continuation of any litigation unless, upon ex parte application, such further payment has been approved by the Standing Committee on Ethics of the Mississippi Bar. An attorney contemplating such payment must exercise due diligence to determine whether such party has received any such payments from another attorney during the continuation *933 of the same litigation, and, if so, the total of such payments, without approval of the Standing Committee on Ethics shall not in the aggregate exceed $1,500. Upon denial of such application, the decision thereon shall be subject to review by the Mississippi Supreme Court on petition of the attorney seeking leave to make further payments. Payments under paragraph aggregating $1,500 or less shall be reported by the lawyer making the payment to the Standing Committee on Ethics within seven (7) days following the making of each such payment. Applications for approval by the Standing Committee on Ethics as required hereunder and notices to the Standing Committee on Ethics of payments aggregating $1,500 or less, shall be confidential.
Miss. Rules of Prof'l Conduct R. 1.8(e).

STATEMENT OF THE CASE
¶ 2. The matter comes to the Court on a petition for review of the denial by the Standing Committee on Ethics of an application by attorneys seeking approval of a proposal to advance $401.39 per month for medical insurance premiums on behalf of G.M., the client who received serious injuries, is unable to work, and was notified by his employer that his health insurance benefits would cease if he fails to pay the monthly premiums needed to maintain the coverage. When the application was filed with the Ethics Committee, G.M. was undergoing active medical treatment and in need of further surgery.[1] The application asks for approval of the monthly payments "until the case is resolved by trial or settlement, or the time that the future need for medical treatment is no longer necessary, whichever occurs first." G.M. acknowledges that he will remain ultimately responsible to repay those costs regardless of the outcome of the litigation.
¶ 3. After receiving the application, the Ethics Committee requested further information concerning G.M.'s background, financial condition and need for the advances. The Committee also asked for comment as to whether the application is a continuing request for permission to make future monthly payments. Responding, the attorneys provided a copy of the accident report on the underlying cause of action and a copy of G.M.'s food stamp card as evidence that he is presumably living below the poverty line. They also represented that if the permission is granted, the law firm will review the client's financial situation each month to determine whether the payments should be made.
¶ 4. Ultimately, the Ethics Committee declined approval of the proposal. In doing so, the Committee reasoned that the proposed payments can be approved only if they are authorized by Rule 1.8(e)(2)(a), which allows "medical expenses associated with treatment for the injury giving rise to the litigation", or by Rule 1.8(e)(2)(b), allowing "reasonable and necessary living expenses incurred." Finding that the premiums would not be allowed under subparagraph (a) since they would cover treatment beyond that associated with the injury under litigation, the Committee then looked to the language of subparagraph (b), finding that it too failed to authorize the payment of insurance premiums. The Committee stated:
Even though health insurance payments might make a client's life easier, the Committee finds that it is not the type advance contemplated by the rule.

*934 The Committee is of the opinion that the Supreme Court did not provide for the payment of insurance premiums in the rule because the rule is designed for extreme cause and that its purpose is to save a client from facing homelessness or starvation or other serious deprivation. Thus, the rule itself states that the expenses "can only be advanced to a client under dire and necessitous circumstances and shall be limited to minimal living expenses of minor sums such as those necessary to prevent foreclosure or repossession or necessary medical treatment."
The Committee finds that the client in this case apparently has sufficient funds to meet minimal living expenses due to the fact that the only relief sought by the petition is the payment of a monthly health insurance premium, which may provide coverage to more people than just the client, but which certainly provides for the payment of treatment of matters not related to the case in question.
The Committee notes that there are tens of thousands of people in Mississippi who do not have health insurance [as well as millions nationwide] and that these people somehow survive.
The Committee further notes that, since the client has qualified for food stamps, then the client may well qualify for Medicaid.
Miss. Bar Standing Comm. on Ethics, Dec. No. 99-1 at 6-7 (Nov. 5, 1999) (emphasis in original).

ANALYSIS
¶ 5. The revision of Rule 1.8(e) in Mississippi had its genesis in the invitation issued to the bench and bar by this Court to suggest a mechanism for dealing with the financial distress of impecunious civil litigants with viable and valuable causes of action which they may lose as a result of their financial distress. Miss. Bar v. Attorney HH, 671 So.2d 1293, 1298 (Miss. 1995). Attorney HH recognized the need to strike a balance between consideration for the prospect of a client being forced unfairly to settle or abandon a legitimate claim due solely to his poverty and disability against the danger of unseemly bidding wars among attorneys. As now written, Rule 1.8(e) addresses the need with this tension in mind. Although attorneys are now allowed to make some such advances, all above a threshold of $1,500 must be approved by the Ethics Committee.[2] In order to prevent the promise of such payments being used as an incentive for employment, the rule prohibits the advances or the promise of them in any amount until sixty days after the attorney is retained. The attorney is obligated to exercise due diligence to determine the financial position of the client and any advances made to him by other attorneys. The attorney cannot promise future payments at any stage of the representation and cannot make the firm's policy or willingness to make advances known to the public at large. The imposition of these safeguards can be expected to limit strictly the use of the authority to humanitarian concern and the need to prevent the loss of the client's cause of action due to economic disadvantage.
¶ 6. Mississippi is not alone in recognizing the need for a relaxation against traditional prohibitions on advances to clients, although it may be said that our new rule is unique in its provisions, including preapproval by the Ethics Committee, which seek to avoid improper use of what should *935 be a humanitarian act. See Ala. Rules of Prof'l Conduct R. 1.8(e)(3); Cal. Rules of Prof'l Conduct R. 4-210(A); Minn. Rules of Prof'l Conduct R. 1.8(e)(3); Tex. Rules of Prof'l Conduct R. 1.8(d)(1).
¶ 7. While our rule is itself restrictive, the Ethics Committee decision in the present case, if sustained, would absolutely bar the payment of medical premiums. In that respect, the Committee has misunderstood the language as well as the intent and purpose of the amendments to Rule 1.8(e). Following subparagraph (b), the rule declares that:
[t]he expenses enumerated in paragraph 2 above can only be advanced to a client under dire and necessitous circumstances, and shall be limited to minimal living expenses of minor sums such as those necessary to prevent foreclosure or repossession or for necessary medical treatment ....
(emphasis supplied). Thus, necessary medical treatment is expressly included in those types of assistance used to exemplify the nature and extent of the aid condoned. While the medical assistance authorized under Rule 1.8(e)(2)(a) is limited to treatment for the injury underlying the client's claim in litigation, such limitation does not exclude other medical assistance from the definition of necessary living expenses under subparagraph (b). Nor does the fact that the insurance "may provide coverage to more people than just the client" justify a broad-brush exclusion. In these times, families may well do without critical medical treatment if the bread winner is unable to maintain medical insurance for the children and dependent spouse. By any definition, such deprivation may well be characterized as dire and necessitous, depending on the circumstances and needs of the client.
¶ 8. An attorney's payment of a client's medical insurance premiums should be reviewed on a case-by-case basis to ensure that there is an actual need that is related to the injury subject to the representation or that the client faces dire and necessitous circumstances sufficient to allow advance payment of medical insurance premiums as a necessary living expense exist.
¶ 9. The Ethics Committee is correct in approaching the allowance of payments by attorneys to clients on a conservative basis. While the rule addresses the real problem of the fact that litigation may be unjustly determined by the plaintiff's dire financial circumstances, there are other contrary dangers to the potential outcome of the representation. If large sums of money are advanced to maintain the client's lifestyle, settlement may be frustrated because the parties must consider the amount needed not only to compensate the client, but also to recoup the lifestyle expenses advanced. Considerations such as these may not allow a client to be objective and reasonable and consider only the merits of the case. Complicating matters is a potential conflict of interest for the attorney, who will consider the recoupment of advanced expenses against what would otherwise be a reasonable settlement for the client.
¶ 10. In choosing an attorney, a client's judgment should always be based on his confidence in the character and capability of the attorney. Allowing attorneys to pay substantial expenses of clients does not allow for an even playing field among attorneys in getting or keeping clients. Many attorneys cannot afford to pay "lifestyle" expenses on behalf of a client. Rule 1.8(e) provides for the payment of "minor sums." What constitutes a "minor sum" differs in the legal profession. Here, payment of over $400 a month for one client's medical insurance premiums, when such payments are to be made for an indefinite period of time, is hardly a "minor sum," *936 particularly in the absence of any recurring medical expense or required medical procedure. There is a great potential for abuse and overuse in paying expenses on behalf of a client. Indeed, many arguments can be made that almost any expense is "reasonable and necessary."
¶ 11. Returning to the specific question of whether payment of premiums as distinguished from cash advances for medical bills may be an appropriate manner of providing assistance, another very, pragmatic consideration supports a construction which does not automatically exclude premiums from those advances authorized by the rule. An attorney who wishes with the best and most appropriate motivation to assist an impecunious client with medical treatment will often be faced with costs for a single operation or course of treatment which may cost thousands of dollars, but which can require relatively modest out-of-pocket expense if the client's existing insurance is maintained. To construe Rule 1.8(e) as authorizing approved advances of the direct cost of the treatment while prohibiting the maintenance of his insurance coverage would defeat the goal of the rule in keeping advances to a minimum.
¶ 12. The Committee in its findings raised the question of whether it has authority to grant approval of a continuing payment, as in the case of monthly insurance premiums. Its doubt appears to be based on the rule's prohibition against promises of future payments by the attorney to the client. However, a distinction is to be made between an attorney making a promise or commitment to the client to make future payments as against the attorney seeking authority to make such future payments from the Committee. Here the attorneys seek leave to make periodic payments, but expressly declare that "at no time did the undersigned counsel promise future payments as an inducement of employment, or promise future payments."
¶ 13. The Committee may have a soundly based concern for approving openended periodic payments. In this case, the attorneys seem to have anticipated that concern by asserting that they would be continued "until the case is resolved by trial or settlement, or the time that the future need for medical treatment is no longer necessary, whichever occurs first," and in their letter responding to the Committee's inquiry said that "[i]f we obtained such permission, then we would decide on a monthly basis whether the financial and medical needs of [G.M.] justified payment of the insurance premiums." The response also said:
The reason the request seeks continuing permission is that as a practical matter the Committee is unable to review the request on a monthly basis as the premiums become due. If the Committee wishes to limit the permission to a certain number of payments, or outline a procedure to follow to make the determination as the payments become due, that is understandable.
We agree with the suggestion that under circumstances wherein periodic payments may be made it is appropriate and will often be necessary for the Committee to limit the permission to a definable period and to require re-application as needed. Such limitations should be imposed in such a manner as to promote the purpose of the rule and not to stifle legitimate advances. The Committee should also recognize when considering the initial application and any re-applications that it is considering assertions of severe and immediate needs, and it should administer the rule expeditiously and without requiring re-application so frequently as to make justifiable advances impractical. Indeed, the very fact that such advances are allowed *937 only in dire and necessitous circumstances requires prompt and efficient handling of the applications.
¶ 14. The rule imposes on the Ethics Committee a responsibility for determining whether any proposed advances are fully justified within its limitations, and the attorneys seeking approval of the Committee must provide it with sufficient information to make the judgment. A mere recitation of the key phrases from the rule with conclusory assertions is inadequate, and in the present case, it must be said that the attorneys have failed to develop fully the client's circumstances and need. Full presentation is particularly important in an ex parte proceeding such as this where the only source for information is the petitioner.
¶ 15. The Ethics Committee was fully justified after receiving the application in requesting further information regarding G.M.'s financial position. While the accident report showing that there was a collision and G.M.'s food stamp card indicating that he had been determined by the Department of Human Services to be in need of the services authorized under the food stamp program are relevant, it cannot be said that every person in Mississippi who qualifies for that program would qualify for advances under Rule 1.8(e). This Court has not relegated to the Department of Human Services the authority to make the determination of qualification under the rule. Beyond the presentation of copies of the accident report and the card, the attorneys here offered nothing more in response to the Committee's inquiry than the statement that, "we interviewed [G.M.] concerning his financial situation, and believe him to be in dire and necessitous circumstances." This response supplemented G.M.'s verified application declaring that he has been unable to work because of the accident and has no means of support. The better practice would have been to provide the Committee with a statement or affidavit setting forth his assets, liabilities and income from any sources, his employment, if any, and employment prospects, his living arrangements and support from other sources, his family support and family obligations and other facts which would give the Committee the details necessary to make an independent judgment without simply relying on the conclusion reached by the attorneys. G.M. does not detail what benefit he will receive for $400 a month. There is no indication of whether the insurance coverage is only for him or whether it will cover other family members. While his attorney asserts that there is a need for additional surgery, there is no evidence of such in the form of a medical report, physician's recommendation, or any documented medical expense that medical insurance is needed to fund. Finally, G.M. has not shown the absence of other sources to provide for his potential medical needs. For example, he has not shown whether his spouse has medical insurance, or, since he has apparently qualified for food stamps, whether his medical expenses can be met with Medicaid.
¶ 16. The Mississippi Bar's Standing Committee on Ethics should consider those questions when considering whether payment of the medical insurance premiums in this case will allow for reasonable and necessary medical expenses as contemplated by the rule.

CONCLUSION
¶ 17. The Standing Committee on Ethics erred in its conclusion that under all circumstances Rule 1.8(e) prohibits the advances of medical insurance premiums by attorneys to their needy clients and in failing to consider limited approval which would allow monthly payments subject to *938 reasonable restrictions and re-applications as needed. The attorneys failed to recognize that the Committee can only do its job diligently after it has been given evidence of the client's circumstances in sufficient detail. On the other hand, this Court recognizes that both the Committee and the attorneys, in attempting for the first time, to administer and use the new rule, operated under an understandable handicap. For that reason, the best course is to remand this matter to the Committee for further consideration with the guidance of this opinion. This Court as well as all the bench and bar must proceed with caution in our efforts to cure an ill without injecting into the lawyer-client relationship a greater affliction.
¶ 18. REMANDED TO THE STANDING COMMITTEE ON ETHICS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
BANKS, P.J., MILLS, WALLER and COBB, JJ., concur.
DIAZ, J., concurs with separate written opinion joined by BANKS, P.J., and McRAE, P.J., and EASLEY, J., join in part.
McRAE, P.J., concurs in part and dissents in part with separate written opinion joined by EASLEY, J., and DIAZ, J., joins in part.
SMITH, J., not participating.
DIAZ, Justice, concurring:
¶ 19. Although I concur with the majority's opinion and holding to reverse the decision of the Standing Committee on Ethics and remand for further consideration, I write separately to address not only the nature of the Committee's holding, but the tone in which it was delivered.
¶ 20. The sole objective sought throughout our extended judicial system is a just result to each problem posed by our citizenry. Our citizens demand, and of course, deserve that their voices be heard and considered by their peers, men and women who share an equal understanding of human affairs. Holland v. State, 587 So.2d 848, 877 (Miss.1991) (Hawkins, P.J., dissenting). It is left to those who sit in judgment to discern from the facts and law presented which result best affords those seeking our guidance a "just" result. More often than not, these peers will be members of a jury or a trial judge. Occasionally, as is the case before us today, they will be members of a committee, unique in both their stated mission and expertise in matters at law.
¶ 21. It is an accepted notion that judgment as to what is "just" or "right" is fluid, changing with the times and circumstances that shape it. Id. at 877. Of paramount importance is the principle that when devising the just result, the judiciary avoid condescension in its decision. I believe that some of the language found in the Committee's decision violated this simple principle, seeming as undignified as it was arrogant.
¶ 22. Specifically, I take issue with the Committee, in justifying its denial of payments for health insurance, noting that "tens of thousands" of people in Mississippi and "millions" nationwide are without health insurance and yet "somehow manage to survive." Similar statements lead one to believe that the Committee prefers the pound of cure to the ounce of prevention. Further comments recognizing that "since the client has qualified for food stamps, then the client may well qualify for Medicaid" suggest placing more responsibility upon an already overly burdened program with limited resources. Such afterthoughts presume too much about a situation the Committee knows too *939 little about, and they are unnecessary in resolving the issue presented.
¶ 23. The Committee also pointed out that the client "apparently has sufficient funds to meet minimal living expenses due to the fact that the only relief sought to by the petition is the payment of a monthly health insurance premium." The Committee concluded that because the client was not "facing homelessness, starvation or other serious deprivation," the request should be denied. To be sure, lack of health insurance is not as serious a deprivation as homelessness or starvation. However, if one views this request by that standard, a skewed perspective results.
¶ 24. Health insurance, to the tens of thousands of Mississippians and millions nationwide who do possess it, is often as important to them and their families as the roof over their heads or the food on their plates. They depend upon it to avoid being forced to choose between paying the ever increasing cost of treating an unexpected illness and keeping the roof over their heads. A court or committee sitting in judgment engenders little respect from those invoking its jurisdiction when it flippantly disregards these daily truths.
BANKS, P. J., joins this opinion. McRAE, P.J., and EASLEY, J., join this opinion in part.
McRAE, Presiding Justice, concurring in part and dissenting in part:
¶ 25. I concur with the majority in that the Standing Committee on Ethics erred in its conclusion that Rule 1.8(e) prohibits the advances of medical insurance premiums by attorneys to their needy clients under all circumstances. However, I dissent as to sending this case back to the Committee for further review. Too much time has passed for the Court to again rule on this matter. On October 12, 1998, the petitioner, G.M., suffered severe injuries from a serious automobile accident. As a result, petitioner was unable to work. His employer informed him on May 31, 1999, that his health insurance premiums would no longer be paid, and that effective in July of 1999, he would be responsible for his health insurance premium of $401.39 per month. This case was initially filed with the Standing Committee on August 12, 1999. An immediate ruling on these payments was expected, although none was given. Three months later, on November 5, 1999, the Committee denied the petitioner's request, and he filed a Petition for Review with this Court on January 21, 2000. This case has been undecided for approximately one year and four months, and this is obviously a moot issue. Sending this case back to the Committee for further determination would extend the duration of this request to approximately two years, and petitioner's health insurance will surely lapse by then, if it has not already.
¶ 26. Health insurance is just as important as house payments or utility bills. It is protection for your family and self for injury or sickness. If one does not pay the car payment, he may still be able to hitch hike or take a taxi. One can not get health insurance to pay exorbitant medical expenses after the injury or illness occurs. Payments for medical insurance premiums cannot be retroactively applied. The policy is cancelled if premiums are not paid.
¶ 27. Allowing this case to go back to the Standing Committee would further delay the immediate needs of the petitioner. The client is in need of this money or the coverage, and prolonging this matter any further would provide an insufficient remedy to the attorney's client. Justice delayed is justice denied.
¶ 28. This case should not be remanded to the Committee for further proceedings. *940 We should hold now that it is covered and allow the expense.
EASLEY, J., joins this opinion. DIAZ, J., joins in part.
NOTES
[1] Rule 1.8(e) requires that the application for approval filed with the Standing Committee be held confidential. For that reason, neither the names of the attorneys nor the client are used in this opinion.
[2] While the lesser advances do not require approval of the Ethics Committee, even those must be reported to the Committee within seven days after they are made.