ESTHER McCRAY & another[1] *vs.* JEROME WEINBERG
& another.[2]

Suffolk.    November 17, 1975. — January 12, 1976.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Attorney at Law.    Fiduciary.    Practice, Civil,* Admissions in plead-
ings; Master: findings.

A master erred in finding that no attorney-client relationship existed
between two plaintiffs and a defendant at the time a finance com-
pany in which the attorney owned the majority of the stock made
certain loans to the plaintiffs where the attorney admitted such a
relationship in his answer. [16-17]
In an action to invalidate a mortgage and the foreclosure of the mort-
gage, evidence warranted a finding that an attorney did not breach
his fiduciary duty to the plaintiffs with whom he had an attorney-
client relationship by arranging a loan for them through a corpora-
tion in which he owned the majority of the stock and by represent-
ing the corporation both in making the loan and in the foreclosure
on the loan. [17-18]

BILL IN EQUITY filed in the Superior Court on February
6, 1973. The suit was heard by *Mason,* J., on a master's
report.

*Arnold E. Cohen* for the plaintiffs.
*Avram G. Hammer* for the defendants.

HALE, C.J.    This action was commenced as a bill in
equity by which the plaintiffs sought to invalidate: (1)
the 1972 foreclosure of a mortgage on their home and (2)

[1] Jolly McCray.

[2] Merit Finance Co. Inc.

the mortgage itself and the note secured by it which the plaintiffs had executed on April 7, 1966. The case was referred to a master, whose report was confirmed by the court, no objections having been made to it. A judge of the Superior Court adopted the master's report and entered judgment dismissing the action. The plaintiffs have appealed from that judgment.

The individual defendant (Mr. Weinberg) is an attorney at law and the owner of fifty-two per cent of the stock of the corporate defendant (Merit). The plaintiffs contend that Mr. Weinberg was their attorney and that he breached his fiduciary duty to them by advising them in a manner detrimental to their best interests and beneficial to those of Merit.

In his subsidiary findings the master determined that on three separate occasions between 1962 and 1964 Mr. Weinberg acted as attorney for the plaintiffs. The matters included an eminent domain proceeding, a small tort claim, and the acquisition of the full title to the plaintiffs' home. The last of those matters was concluded on March 2, 1964.

Jolly, the male plaintiff, had operated a trucking business for thirty years prior to April, 1966. While his formal education was limited to grade school, he was intelligent and was an experienced and knowledgeable businessman who kept his own business books of account.

The master further found that over a period of years beginning in the late 1950's Jolly borrowed money on a number of occasions for various purposes from both Merit and Mr. Weinberg. Between April 14 and November 18, 1965, the plaintiffs obtained five separate loans, the first loan being in the amount of $1,000 and the last (November 18) being in the amount of $3,100. Each successive loan refinanced the total outstanding prior indebtedness, so that the only amount owed by the plaintiffs on November 18 was $3,100. Each of the last three loans bore interest at the rate of one and one-half per cent per month and was secured by a second mortgage on the plaintiffs' home.

On or about April 1, 1966, the plaintiffs owed Merit a balance of $3,078.11 on the November 18 loan. At that

time the plaintiffs requested a new loan from Mr. Weinberg to refinance the old one and to provide additional funds to build a new porch for their home. Mr. Weinberg at first declined to make the loan and informed Jolly that he had gone as far as he could go. Later, Mr. Weinberg agreed to make the loan on the condition that the first mortgage be paid off.

Merit loaned the plaintiffs $5,000 on April 7, 1966, taking as security for the note a mortgage on the plaintiffs' home. The note provided for payments in monthly installments of $105.09 each, with interest at the rate of one and one-half per cent per month.[3] A tax reserve account was established into which the plaintiffs agreed to pay $48 a month in addition to the monthly payments of interest and principal due on the note. Mr. Weinberg explained all of the terms of the loan to the plaintiffs who understood them. The plaintiffs signed the note voluntarily, without any influence or misrepresentation on the part of Mr. Weinberg.

Beginning in June, 1966, the plaintiffs fell behind in their payments on both the mortgage note and the tax payment account. As a result almost all of the payments thereafter received were applied to interest, with little reduction in the principal amount. By October of 1972 the plaintiffs had made total payments of $6,824.42. The loan balance stood at $4,528.15, and Mr. Weinberg had paid $3,846.07 on behalf of Merit to satisfy a city of Boston tax lien. The mortgage was foreclosed by sale. Mr. Weinberg, acting on behalf of Merit, made the sole bid of $1,000. Merit has waived all claims to the resulting deficiency.

The master also made "general findings of fact." In them he found that during the fifteen years in which Mr. Wein-

---

[3] The proceeds of the loan were applied as follows:

$3,078.11 — to pay off outstanding loan.
$  493.40 — to pay off first mortgage (held by a cooperative bank).
$  336.00 — for tax reserve.
$  215.00 — Mr. Weinberg's fee and disbursements as attorney for Merit.
$  877.49 — balance to plaintiffs.

$5,000.00 — total.

berg did business with the plaintiffs he was employed as an attorney on only the three occasions, not on a continuing or steady basis; that for a period of more than two years prior to April 7, 1966, Mr. Weinberg had furnished no legal services or advice to the plaintiffs; that in connection with the April 7, 1966, loan Mr. Weinberg was acting as attorney for Merit; that in making the loan Mr. Weinberg had not furnished legal services to the plaintiffs; and that no attorney-client relationship existed between the plaintiffs and Mr. Weinberg with respect to that transaction. The master also found that the interests of Mr. Weinberg and Merit were virtually the same and that the relationship between Mr. Weinberg and Merit on the one hand and the plaintiffs on the other was basically that of lender and borrower.

1. We agree with the plaintiffs' contention that we should disregard those findings of the master to the effect that no attorney-client relationship existed between Mr. Weinberg and the plaintiffs for the reason that the defendants had admitted the fact of such relationship in their answer,[4] and that they were bound by that admission. See G. L. c. 231, § 87; *Wasserman* v. *Tonelli*, 343 Mass. 253, 257 (1961), and cases cited; *Ciarletta* v. *Commissioner of Corps. & Taxn.* 3 Mass. App. Ct. 737 (1975). We construe the defendant's answer to the last paragraph of the allegations in the plaintiffs' bill[5] not as a denial of the existence of the attorney-client relationship but rather as a denial of the allegations (1) that Mr. Weinberg had acted as the

---

[4] Paragraph 9 of the bill of complaint alleged: "[F]rom March 2, 1964 up to and including April 7, 1966, respondent, Jerome Weinberg, continued to act as lawyer for petitioners, Esther and Jolly McCray, and also to act as an officer and owner of Merit Finance Co., Inc., in loaning moneys to petitioners, Esther and Jolly McCray."

The answer to that paragraph was "admitted."

[5] That paragraph alleged that "at all times the respondent, Jerome Weinberg, acted not only as an officer and owner of the said Merit Finance Co., Inc., but acted as attorney for the petitioners and advised them in a manner detrimental to their best interests, but to the best interests of the said respondent, Merit Finance Co., Inc."

The defendant's answer was "The respondent, Jerome Weinberg, denies the allegations."

plaintiffs' attorney in the various loan transactions and (2) that he had advised them in a manner detrimental to their interests.

As no objection was made to the master's report and as the subsidiary findings of the master which we have summarized above are otherwise within the scope of the pleadings, they are conclusive between the parties (*Jones* v. *Gingras,* 3 Mass. App. Ct. 393, 394-395 [1975]), and we consider the remaining contentions of the plaintiffs in the light of those findings.

2. The plaintiffs pose their next contention in the form of a question: "[D]id respondent breach the fiduciary duty which attaches to this relationship in lending money to the petitioners at a one and one-half per cent monthly interest rate and taking what was effectively a first mortgage on their home as security therefor, and eventually taking title to this property by way of foreclosure?"

We have recently stated in *Goldman* v. *Kane,* 3 Mass. App. Ct. 336, 341 (1975), "When an attorney bargains with his client in a business transaction in a manner which is advantageous to himself, and if that transaction is later called into question, the court will subject it to close scrutiny. In such a case, the attorney has the burden of showing that the transaction 'was in all respects fairly and equitably conducted; that he fully and faithfully discharged all his duties to his client, not only by refraining from any misrepresentation or concealment of any material fact, but by active diligence to see that his client was fully informed of the nature and effect of the transaction proposed and of his own rights and interests in the subject matter involved, and by seeing to it that his client either has independent advice in the matter or else receives from the attorney such advice as the latter would have been expected to give had the transaction been one between his client and a stranger.' *Hill* v. *Hall,* 191 Mass. 253, 262 (1906)." We apply those principles to the present case. The questioned transaction bore all of the earmarks of a profitable one, having as it did an effective annual interest rate of eighteen per cent. It was, however, the last in a series of loan trans-

actions between the parties extending over a period of years. The last three loans carried interest at the same rate and were secured by a second mortgage of the same property which was made subject to the presently questioned mortgage. The propriety of Mr. Weinberg's conduct in the prior transactions has not been questioned, nor has the validity of the notes and mortgages executed in connection therewith. The interest rate, though high, was concededly legal. Jolly was an experienced businessman. He and his wife had requested the loan. The loan and its payment terms were explained by Mr. Weinberg and were understood by the plaintiffs. The new note and mortgage for $5,000 were voluntarily executed by the parties and in effect replaced two existing mortgages on the property, which secured notes which had a total principal balance of $3,571.51, with the larger second mortgage note having the same interest rate as the new note.

There is no rule of law that in the absence of independent advice every transaction between attorney and client must be set aside. *Barnum* v. *Fay,* 320 Mass. 177, 181 (1946). There is no indication here that the transaction was not fairly and honestly conducted. The findings of the master are quite to the contrary. "The effect of the findings is that there was no overreaching by ... [Mr. Weinberg] and that he did not commit any breach of the fiduciary relationship that he owed the plaintiff[s]." *Ruczinski* v. *Russ,* 337 Mass. 514, 516 (1958). Contrast *Hill* v. *Hall,* 191 Mass. 253 (1906); *Israel* v. *Sommer,* 292 Mass. 113 (1935); *Goldman* v. *Kane,* 3 Mass. App. Ct. 336 (1975).

The action of the Superior Court in entering the judgment dismissing the plaintiffs' action was correct.

*Judgment affirmed.*