735 So.2d 294 (1999)
ATTORNEY AAA
v.
The MISSISSIPPI BAR.
No. 97-BA-00917-SCT.
Supreme Court of Mississippi.
March 31, 1999.
T. Jackson Lyons, Jackson, Attorney for Appellant.
Michael B. Martz, Jackson, Attorney for Appellee.
*295 EN BANC.
SMITH, Justice, for the Court:
¶ 1. This case comes to this Court regarding an alleged violation by Attorney AAA of MRPC 1.8(a), 1.8(e) concerning the advancement of certain medical and living expenses by the attorney to a client. Additionally, the issue of an attorney failing to supervise an employee and sharing fees with that employee is also before us for determination.
¶ 2. This Court recently by order of March 25, 1999, amended Rule 1.8(e). Applying the amendment to the case at bar, we hold that Attorney AAA did not violate Rule 1.8(a) or 1.8(e). However, we find that Attorney AAA failed to properly supervise his employee and shared fees with that employee in violation of Rules 5.3(a)(b) and (c) as well as Rule 5.4(a).

FACTS
¶ 3. Attorney AAA was retained by Everlina Jones to represent her with regard to a claim that she had for personal injuries suffered as a result of an incident. Everlina Jones' claim was settled for $18,000 and disbursement was made by Attorney AAA.
¶ 4. Attorney AAA was paid an attorney's fee of $6,000 for his representation of Everlina Jones. Out of the $6,000 attorney fee, Attorney AAA paid Robert Le-Flore, a paralegal employed by the firm, $3,000. The payment was made on December 18,1992, as evidenced by check number 2071 drawn on the Attorney AAA's Client's Trust Account. Attorney AAA signed the check.
¶ 5. On December 18, 1992, Attorney AAA reimbursed LeFlore for medical expenses in the amount of $1,414.64. This amount reflected funds advanced on behalf of Everlina Jones by LeFlore for payment of the following medical bills: $50 to Dr. Paul Jackson on November 11, 1992 and $158 to Dr. Richard Knutson on November 23, 1992. The amount also included payments of $300 and $906.64 for past due car payments.
¶ 6. On November 21, 1994, Everlina Jones filed an informal complaint with the Bar against Attorney AAA wherein she accused Attorney AAA of misconduct by failing to pay medical bills in a personal injury settlement he was supposed to pay per settlement agreement and failing to pay her the correct amount even if he had paid the bills.
¶ 7. On December 20, 1994, the Bar sent Attorney AAA a copy of the complaint filed against him by Everlina Jones. Attorney AAA did not initially answer the Bar's request that he respond to Jones' complaint. Consequently, on January 13, 1995, the Bar sent another letter to Attorney AAA demanding that he respond to Jones' complaint.
¶ 8. On January 23, 1995, Attorney AAA responded to the Bar's January 13, 1995 letter. On January 24, 1995, Attorney AAA sent in a more detailed response to the complaint filed against him. On February 6, 1995, Attorney AAA sent an additional letter to the Bar wherein he indicated he was in the process of accumulating additional information from the hospital that would put "the matter to rest once and for all." On February 27, 1995, the Committee on Professional Responsibility sent the Bar's General Counsel a letter directing him to conduct a preliminary inquiry to get updated information from Attorney AAA and to report back to the Committee with any information that was supplied by Attorney AAA.
¶ 9. On March 31, 1995, the Bar sent a letter to Attorney AAA asking him for a status report. On April 13, 1995, Attorney AAA sent a letter to the Bar wherein he indicated that the matter had been resolved to the best of his knowledge.
¶ 10. On May 8, 1995, the Bar received a letter dated February 28, 1995 from Everlina Jones which advised the Bar that Jones was withdrawing the complaint she *296 had filed against Attorney AAA effective March 1, 1995.
¶ 11. On May 15, 1995, the Bar's Committee on Professional Responsibility issued a directive to the Bar's General Counsel to conduct an investigation, hearing and report into allegations that Attorney AAA had engaged in conduct that was in violation of Rules 1.2, 1.3, 1.4, 1.15 and 8.4(a, c & d) of the Mississippi Rules of Professional Conduct.
¶ 12. After the original Formal Complaint was filed on July 31, 1995, the Bar caused to be issued and served on Attorney AAA a Subpoena Duces Tecum directing Attorney AAA to appear and produce certain documents on February 23, 1996, which was the same day trial of the original Formal Complaint was set. Approximately one week prior to February 23, 1996, Attorney AAA contacted the Bar's General Counsel and expressed a desire for a continuance of the trial set for February 23, 1996. After various discussions and by agreement between the counsels involved, the trial set for February 23, 1996, was continued, and Attorney AAA delivered to the Bar the documents requested in its Subpoena Duces Tecum.
¶ 13. Following the hearing on the complaint, the Tribunal found that Attorney AAA violated the provisions of Rule 1.8(a), MRPC, which prohibits a lawyer from entering into a business transaction with a client or knowingly acquiring an ownership, possessory or pecuniary interest adverse to a client through the actions of Attorney AAA' paralegal, LeFlore, who loaned Ms. Jones $300 on September 22, 1992, and who paid her past due bank notes on December 12, 1992, in the amount of $906.64 including late charges and the cost of the purchase of the money order.
¶ 14. In addition, the Tribunal found that Attorney AAA violated the provisions of Rule 1.8(e), MRPC, which prohibits a lawyer from providing financial assistance to a client in connection to pending or contemplated litigation. Attorney AAA, through his paralegal LeFlore, violated the provisions of this rule by loaning Jones $300, paying Dr. Jackson $50 and Dr. Knutson $158 and paying the Cleveland State Bank and GMAC $906.64.
¶ 15. The Tribunal further found that Attorney AAA violated the provisions of Rules 5.3 (a, b and c) MRPC, which provides with respect to a non-lawyer employed or retained by or associated with a lawyer that: (a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer; (b) a lawyer having direct supervisory authority over the non-lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyers; and (c) a lawyer shall be responsible for the conduct of such a person it would be in violation of the rules of professional conduct if engaged in by the lawyer if the lawyer orders with the knowledge of the specific conduct or ratifies the conduct involved or the lawyer is a partner of the law firm in which the person is employed or has direct supervisory authority over the person that knows of the conduct at the time when its consequences can be avoided or mitigated but fails to take reasonable or medial action.
¶ 16. The actions associated with this violation are that Attorney AAA was Le-Flore's supervisor and either knew or should have known of the improper, unethical and unprofessional conduct engaged in by LeFlore by his making a personal loan to Jones, paying medical bills on her behalf and paying past due car notes on her behalf.
¶ 17. Also, the Tribunal found that Attorney AAA violated the provisions of Rule 5.4(a), MRPC, by sharing his attorney's fee with a non-lawyer.
¶ 18. Attorney AAA was suspended from the practice of law for a period of one year and was ordered to take and pass the bar examination as a condition of reinstatement. *297 Feeling aggrieved Attorney AAA appeals raising the following issues:
I. WHETHER THE CONSTITUTIONS OF THE UNITED STATES AND MISSISSIPPI, UNDER THEIR EQUAL PROTECTION COMPONENTS, FORBID ENFORCEMENT OF RULE 1.8(E), MRPC, AS IT IS NOW WRITTEN, WHERE THE RULE PERMITS SOME PAYMENTS BY THE LAWYER ON THE CLIENT'S BEHALF BUT FORBIDS OTHERS.
II. WHETHER THE TRIBUNAL ERRED AS A MATTER OF LAW IN FINDING A VIOLATION OF RULE 1.8(A), MRPC, WHERE THE LAWYER ENGAGED IN NO BUSINESS TRANSACTIONS WITH THE CLIENT.
III. WHETHER THE TRIBUNAL PRESENTED CLEAR AND CONVINCING EVIDENCE SUPPORTING ITS VIEW THAT THE LAWYER FAILED TO PROVIDE ADEQUATE SUPERVISION OF AN EMPLOYEE SOLELY BECAUSE THE LAYER IS A PRACTICING MINISTER, AS WELL AS A PRACTICING LAWYER.
IV. WHETHER THE TRIBUNAL'S FINDING THAT THE LAYER HAD IMPROPERLY SHARED LEGAL FEES WITH AN EMPLOYEE WAS BASED ON CLEAR AND CONVINCING EVIDENCE WHERE THE LAWYER AND EMPLOYEE AGREED THAT THE SUM PAID DID NOT REPRESENT A "CONTINGENT" AMOUNT, BUT RATHER PAYMENT OF AMOUNTS DUE THE EMPLOYEE, AND WHERE THERE WAS NO EVIDENCE OF AN EXPRESS OR TACIT AGREEMENT FOR PERCENTAGE OR CONTINGENT FEES.
V. WHETHER THE SANCTION IMPOSED, A ONE YEAR SUSPENSION, WITH REINSTATEMENT CONDITIONED UPON APPLICATION THEREFOR, TAKING AND PASSING THE BAR EXAMINATION, AND TAKING THE MULTI-STATE ETHICS EXAMINATION, WERE PROPORTIONAL UNDER THE CIRCUMSTANCES WHERE A LAWYER'S EMPLOYEE, WITHOUT THE LAWYER'S KNOWLEDGE, ADVANCED SMALL SUMS TO A CLIENT.

STANDARD OF REVIEW
¶ 19. This Court has exclusive inherent jurisdiction over attorneys and their licenses to practice law. The Mississippi Bar v. Attorney HH, 671 So.2d 1293, 1295 (Miss.1995); Mississippi State Bar v. Attorney D, 579 So.2d 559, 561 (Miss.1991). "Even though this Court convenes a Tribunal to make findings of fact and recommendations to this Court, this Court addresses the case de novo." Mississippi State Bar v. Nichols, 562 So.2d 1285, 1287 (Miss.1990). There is no standard as to what punishment for particular misconduct ought to be. Goeldner v. Mississippi State Bar Ass'n, 525 So.2d 403, 407 (Miss. 1988).

LEGAL ANALYSIS

I. WHETHER THE CONSTITUTIONS OF THE UNITED STATES AND MISSISSIPPI, UNDER THEIR EQUAL PROTECTION COMPONENTS, FORBID ENFORCEMENT OF RULE 1.8(E), MRPC, AS IT IS NOW WRITTEN, WHERE THE RULE PERMITS SOME PAYMENTS BY THE LAWYER ON THE CLIENTS BEHALF BUT FORBIDS OTHERS.
*298 ¶ 20. In this first assignment of error, Attorney AAA does not contest that his employee improperly advanced certain living expenses to a client. However, he contends that these facts should not delay this Court from considering whether Rule 1.8(e) is facially invalid. Attorney AAA asserts that the rule, if applied, creates categories which do not provide equal application of the law. Attorney AAA relies on the Fourteenth Amendment which provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amendment XIV, § 1. Mississippi's due process provision provides: "No person shall be deprived of life, liberty, or property except by due process of law." Miss. Const. Art. 3, § 14.
¶ 21. Attorney AAA contends that, though worded differently, the Court has concluded that equal protection is an implicit part of Mississippi's due process clause and is coterminous with the Fourteenth Amendment. Accord, Tucker v. Hinds County, 558 So.2d 869, 873 (Miss. 1990). Attorney AAA asserts that Mississippi applies the same analytical framework as is applied to the federal guarantee: "The government is without the right to deprive a person of life, liberty, or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental power." Attorney AAA contends that under either Mississippi or federal law, if the classifications created by Rule 1.8 bear a rational relationship to a legitimate governmental interest, the Rule may be sustained.
¶ 22. Attorney AAA asserts that the question is whether Rule 1.8's classifications are rationally related to a legitimate governmental interest. Appellant relies on the case of Mississippi Bar v. Attorney HH, 671 So.2d 1293 (Miss.1995). That case involved a lawyer who argued that Rule 1.8(e) offended the Mississippi Constitution's guarantee. The governmental interests at stake were mentioned by the Attorney HH Court:
We are sensitive to the concern over leveling the playing field for injured parties.... Our concern is that unregulated lending to clients would generate unseemly bidding wars.... We invite the bench, bar and public to suggest a mechanism for dealing with the problem of the impecunious civil litigant with a viable and valuable claim.
Attorney HH, 671 So.2d at 1298.
¶ 23. Attorney AAA asserts that the general purpose of the Rule is to prevent attorneys from becoming so financially self-interested in a case that the lawyer's judgment and loyalty to the lawyer's client are affected. Attorney AAA states that the Court honestly admitted, there is no rational distinction between a lawyer's financial self-interest in advancing tens of thousands of dollars for investigation and expert witness fees and, as here, the lawyer's self-interest in recouping $1,414.64 advanced for an impecunious client's living expenses. In this case, Attorney AAA did not know about the loans and has not recouped the expense he did not realize he was making.
¶ 24. Attorney AAA asserts that there is no rational relationship, then, between the categories created by Rule 1.8 and the governmental interest in ensuring that a lawyer does not become so financially involved that the lawyer's judgment is affected. The fact that one category may lead to discipline and the other not is what runs afoul of the equal protection guarantee. According to Attorney AAA the question then becomes can the rule be upheld on the basis that it prevents "unseemly bidding wars"? Attorney AAA thinks not and states that even in its current guise, the rule does not prevent bidding wars nor does it presume to.
*299 ¶ 25. Attorney AAA identifies other jurisdictions which have rules allowing funds to be advanced to impecunious clients under certain circumstances. E.g., Alabama, Rule 1.8(e)(3); California, Rule 4-210; Minnesota, Rule 1.8(e)(3); North Dakota, Rule 1.8(e)(3); and Texas, Rule 1.08(d)(1). Most of these jurisdictions have similar restrictions which are rationally related to the legitimate interest of the state in avoiding bidding wars.
¶ 26. Finally Attorney AAA asserts that rather than endure classifications which are not rationally related to the declared policies purportedly supporting the classification, the Court should employ the plenary power over its officers and declare Rule 1.8(e) to be unconstitutional.
¶ 27. Appellee in this matter states that appellant's criticism of the Rule allowing an attorney to advance the costs and expenses of the litigation and not allowing an attorney to underwrite the client's living and medical expenses during the pendency of the client's claim has already been discussed and upheld. Therefore, asserts appellee, until Rule 1.8(e), MRPC, is changed the Bar will enforce said rule as written and previously interpreted by this Court.
¶ 28. Rule 1.8 (e) of the Mississippi Rules of Professional conduct provides:
A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
¶ 29. This Court in The Mississippi Bar v. Attorney HH, 671 So.2d 1293 (Miss. 1995) recognized the inconsistency of asserting that a lawyer's interest in recovering moneys lent to a client for living and medical expenses would affect his judgment while the prospect of losing possibly vast sums advanced in the form of litigation expenses would not. However, in reasoning, this Court is concerned that the unregulated lending to clients would generate unseemly bidding wars for cases and would inevitably lead to further denigration of our civil justice system. The Court went on to invite the bench, bar and public to suggest a mechanism for dealing with the problem of the impecunious civil litigant with a viable and valuable claim. Until a mechanism is created this Court enforces the standards of conduct as written.
¶ 30. Other courts have addressed the same idea presented in this claim and have found such conduct to be violative of the Rules of Professional Conduct. Shea v. Virginia State Bar, 236 Va. 442, 374 S.E.2d 63, 64 (1988) (attorney violated DR 5-103(B) by advancing more than $6,000 to pay his client's creditors for such personal expenses such as rent, electrical bill, automobile expenses, and other household expenses); Kentucky Bar Association v. Mills, 808 S.W.2d 804 (Ky.1991), (attorney violated DR 5-103(B) when he advanced $6,400 to his client and her daughter); In re John Laverne Reaves, 272 S.C. 213, 250 S.E.2d 329 (1978), (attorney admitted the practice of making loans to his clients, in one instance money given was used to fund a vacation for the client, Reaves Court held that the loan violated DR 5-103(B)).
¶ 31. Following the invitation of the Court in The Mississippi Bar v. Attorney HH, 671 So.2d 1293 (Miss.1995), an Ad Hoc committee was appointed by the Bar to study and make recommendations concerning what changes, if any, to the MRPC, should be proposed to this Court by the Bar. The committee consisted of David R. Smith, Thomas L. Tullos and Dennis C. Sweet, III., and Mississippi Trial Lawyers' Association, (MTLA), appointees Crymes G. Pittman, Christopher Breard and Mark Sledge. Pursuant to the suggestions reported to the Bar by that committee, the Board voted to amend Rule 1.8(e), MRPC, to authorize the payment of personal living expenses and reasonable and necessary medical expenses under certain *300 conditions. The Board requested that this Court amend Rule 1.8(e) as follows:
I. PREAMBLE: A LAWYER'S RESPONSIBILITIES
PROPOSED AMENDMENT
The legal profession has an obligation to see that every person in our society has ready access to the independent professional services of a lawyer of integrity and competence. It is likewise axiomatic under our system of justice that every citizen should have equal access to the courts. To provide access to the courts without providing access to the competent legal services of an attorney would indeed be meaningless. Under our system of justice, every attempt has been made to insure that those in need of legal redress, impoverished though they may be, are afforded access to the court. Likewise, it is the responsibility of the legal profession to assure that these same people will not be deprived of meaningful access to the justice system by denying meaningful access to competent counsel.
II. RULES OF PROFESSIONAL CONDUCT
PROPOSED AMENDMENT
A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings, except that:
1. A lawyer may advance court costs and expenses of litigation, including but not limited to reasonable medical expenses necessary to the preparation of the litigation for hearing or trial, the repayment of which may be contingent on the outcome of the matter; and
2. A lawyer representing a client may, in addition to the above, advance the following costs and expenses on behalf of the client, which shall be repaid upon the successful conclusion of the matter.
a. Reasonable and necessary medical expenses associated with treatment for the injury giving rise to the litigation or administrative proceeding for which the client seeks legal representation; and
b. Reasonable and necessary living expenses incurred.
The expenses enumerated in paragraph (2) above can only be advanced to a client under dire and necessitous circumstances. There can be no payment of expenses under paragraph (2) until the expiration of 60 days after the client has signed a contract of employment with counsel. Such payments under paragraph (2) cannot include a promise of future payments, and counsel cannot promise any such payments in any type of communication to the public and such funds may only be advanced after due diligence and inquiry into the circumstances of the client.
¶ 32. In its Amicus Curiae Brief, the Mississippi Trial Lawyers' Association, (MTLA), submitted that Alabama, the District of Columbia, California, Louisiana, Minnesota, North Dakota and Texas allow payment of these type of expenses to some degree. Also Vermont permits the advancing of financial assistance to indigent clients.
¶ 33. This Court first assigned the proposed amendment to its Rules Committee consisting of Presiding Justice Pittman, Justice Banks and Justice Waller, who made recommendations to the Court sitting En Banc. This Court agrees that changes are necessary to the rule which will permit some degree of financial assistance to clients who are in dire circumstances. The Court, by order of March 25, 1999, therefore adopted the following amendment to Rule 1.8(e):
A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, or administrative proceedings, except that:

*301 1. A lawyer may advance court costs and expenses of litigation, including but not limited to reasonable medical expenses necessary to the preparation of the litigation for hearing or trial, the repayment of which may be contingent on the outcome of the matter; and
2. A lawyer representing a client may, in addition to the above, advance the following costs and expenses on behalf of the client, which shall be repaid upon successful conclusion of the matter.
a. Reasonable and necessary medical expenses associated with treatment for the injury giving rise to the litigation or administrative proceeding for which the client seeks legal representation; and
b. Reasonable and necessary living expenses incurred.
The expenses enumerated in paragraph 2 above can only be advanced to a client under dire and necessitous circumstances, and shall be limited to minimal living expenses of minor sums such as those necessary to prevent foreclosure or repossession or for necessary medical treatment. There can be no payment of expenses under paragraph 2 until the expiration of 60 days after the client has signed a contract of employment with counsel. Such payments under paragraph 2 cannot include a promise of future payments, and counsel cannot promise any such payments in any type of communication to the public, and such funds may only be advanced after due diligence and inquiry into the circumstances of the client.
Payment under paragraph 2 shall be limited to $1,500 during the continuation of any litigation unless, upon ex parte application, such further payment has been approved by the Standing Committee on Ethics of the Mississippi Bar. Such applications and the decisions thereon shall be confidential, and upon denial of such application, the decision thereon shall be subject to review by the Mississippi Supreme Court on petition of the attorney seeking leave to make further payments.
¶ 34. This Court, having adopted the amendment to Rule 1.8(e), therefore agrees with the rules promulgated by our sister states. We find that the amount of funds advanced to Jones, $1,414.64, is less than the limit of $1,500 set out in the amended Rule 1.8(e). Also, the funds were clearly advanced for medical expenses and living expenses in accordance with the amended rule. Thus, we hold that the action of loaning Jones money to pay some of her medical and living expenses is not a violation of Rule 1.8(e), MRPC.

II. WHETHER THE TRIBUNAL ERRED AS A MATTER OF LAW IN FINDING A VIOLATION OF RULE 1.8(A), MRPC, WHERE THE LAWYER ENGAGED IN NO BUSINESS TRANSACTIONS WITH THE CLIENT.
¶ 35. In his next assignment of error, Attorney AAA argues that research reveals no cases where a court has found lending an impecunious client money violates the policy against lawyers acquiring a business interest or advantage at the expense of a client.
¶ 36. Attorney AAA asserts that Rule 1.8(a) does not define what a "business transaction" is. Typically, argues Attorney AAA, cases involving Rule 1.8(a) revolve around some enterprise which the lawyer and client have entered into expecting to profit.
¶ 37. Attorney AAA states that the most recent Annotated Model Rules breaks the prohibited business transactions into three categories: (1) prohibited loan transactions where the client loans the lawyer or an alter ego money; prohibited sale transactions where the lawyer benefits from some purchase made by the client; and solicitations of investment funds.
¶ 38. Attorney AAA relies on the case of Goldman v. Kane, 3 Mass.App.Ct. 336, 329 *302 N.E.2d 770 (1975). In Goldman, the Executor of Lawrence Hill's estate sued Hill's attorney, Kane. Hill, whose trust fund provided him an annual income of about $40,000 in 1967, decided to live on a boat in Florida. In order to finance the purchase of the boat, Hill ordered Kane to sell Hill's real property on Cape Cod.
¶ 39. Hill became desperate for money because he stood to lose a sizeable deposit if he could not finance the balance of the purchase price by a certain date. Kane told Hill that it would was virtually impossible to finance the balance given Hill's financial predicament and the time frame. Kane then offered to cause his corporation to loan Hill the money on the condition that Hill convey absolute title to both the Cape Cod home and the boat. Upon repayment, only the boat was to be reconveyed to Hill. While the loan was interestfree, Kane's corporation was to retain the Cape Cod real property.
¶ 40. Hill defaulted on the $30,000 note and Kane's corporation sold the Cape property for $86,000. Kane also took possession of the boat following default. The related to a lending deal vastly profiting the lawyer. The lawyer caused $30,000 to be loaned an recouped, following default, not only the real property, but the boat too.
¶ 41. Attorney AAA argues that the loan in Goldman involved the purchase of a boat for the lawyer's financial advantage and the client's lifestyle. Attorney AAA contends that this seems a typical "business transaction" in the sense that there was an endeavor involving bargaining between the parties, unrelated to the representation, from which both parties expected to benefit which facts, are absent from this case.
¶ 42. Attorney AAA argues that Jones did not expect to benefit in any way unrelated to her case. Attorney AAA argues that LeFlore did not expect to be repaid any interest, nor was this a part of his duties with Attorney AAA's firm, or a means of generating income.
¶ 43. Finally Attorney AAA argues that while Bar proceedings are only "quasicriminal" in terms of procedural due process and other aspects, Rule 1.8(a) contains an intent requirement: "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or pecuniary interest adverse to the client ..." In this case, appellant argues that appellant cannot easily be said to have violated a rule against entering into business transactions when he did not know they were occurring.
¶ 44. Appellee in this matter contends that appellant does not dispute the fact that LeFlore loaned Jones money. Thus by definition of the phrase "loaning money to someone, with expectation that the money will be repaid", a creditor-debtor relationship is established which constitutes a business relationship in violation of the applicable disciplinary rule. Appellee contends that Rule 1.8(a), MRPC, allows a lawyer to enter into a business relationship with a client if the following conditions are met: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given reasonable opportunity to seek advice of independent counsel in the transaction; and (3) the client consents in writing thereto. Appellee argues that in this case these three conditions were not fully satisfied. Appellee contends that appellee is not championing the position that a lawyer's loaning money to a client, either directly or through his employees, is a per se violation of Rule 1.8(a), it is, however, taking the position that Rule 1.8(a)'s disclosure, consultation and consent provisions must be met and no pretense was made by appellant that either he or his employee met these requirements.
¶ 45. Finally appellee argues that the subject rule does not require specific knowledge or intent therefore the Tribunal correctly applied Rule 1.8(a), MRPC, to *303 the facts presented in this case and its ruling should not be reversed.
¶ 46. Rule 1.8 (a), MRPC, provides that a lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interests are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto.
¶ 47. In the case sub judice, LeFlore loaned money to Jones and paid some of her bills. LeFlore was reimbursed for those loans out of the settlement. It is noted that this is one incident controlled by one set of facts. This action does not constitute a business transaction under Rule 1.8(a). Further, and more importantly after the adoption of the amendment, it does not violate Rule 1.8(e), MRPC.

III. WHETHER THE TRIBUNAL PRESENTED CLEAR AND CONVINCING EVIDENCE SUPPORTING ITS VIEW THAT THE LAWYER FAILED TO PROVIDE ADEQUATE SUPERVISION OF AN EMPLOYEE SOLELY BECAUSE THE LAWYER IS A PRACTICING MINISTER, AS WELL AS A PRACTICING LAWYER.
¶ 48. Attorney AAA does not contest that he provided inadequate supervision of LeFlore. However, Attorney AAA contends that the Tribunal's ruling from the bench and its written opinion contain language suggesting that it believed LeFlore may have been practicing law because Attorney AAA spends 75% of his time on pastoral duties. Attorney AAA asserts that this Court should decline the Tribunal's invitation to find that his employee was practicing law and vacate the Tribunal's apparent holding that Attorney AAA' supervision is inadequate solely because of the time spent on his pastoral duties.
¶ 49. The Bar contends that this assignment of error is without merit because Attorney AAA admitted at trial that he provided inadequate supervision of and to his non-lawyer employee, Robert LeFlore.
¶ 50. In his testimony, Attorney AAA admits to lack of supervision of his employee.
Q. Okay. Well, you recognize, Attorney AAA, that you are responsible for what goes on in ...
A. Yes.
Q .... your office?
Q. Your..
A. I mean there is no excuse, Mr. Martz, for any of this. It's just lack of supervisory oversight. I am not denying any of this happened. It happened, and I did not have proper oversight like I should have.
Q. And you haven't
A. It's already happened.
Q. denied that throughout these proceedings that you're responsible for what goes
A. No. sir, I'm responsible for. I'm responsible.
Therefore, this assignment of error is without merit.

IV. WHETHER THE TRIBUNAL'S FINDING THAT THE LAWYER HAD IMPROPERLY SHARED LEGAL FEES WITH AN EMPLOYEE WAS BASED ON CLEAR AND CONVINCING EVIDENCE WHERE THE LAWYER AND EMPLOYEE AGREED THAT THE SUM PAID DID NOT REPRESENT A "CONTINGENT" AMOUNT, BUT RATHER PAYMENT OF AMOUNTS DUE THE EMPLOYEE, AND WHERE THERE WAS NO EVIDENCE OF AN EXPRESS OR TACIT *304 AGREEMENT FOR PERCENTAGE OR CONTINGENT FEES.
¶ 51. Attorney AAA argues that there is no evidence that the employment arrangement between Attorney AAA and LeFlore involved LeFlore's receipt of a share of attorney's fees generated by Everlina Jones' case or any other. Attorney AAA contends that the Tribunal must have clear and convincing evidence to support a finding as a fact that Attorney AAA shared fees with LeFlore. To meet the clear and convincing standard, the Bar and Tribunal, argues Attorney AAA, relied exclusively on an inference of fee sharing arising from the fact that LeFlore was paid an amount equaling half the fee earned by Attorney AAA in Jones' case. Appellant asserts that this is too thin an inference viewed in light of the other evidence offered, and the evidence not present. Also, Attorney AAA asserts that when the facts are viewed in light of the policies behind the rule against fee sharing, the Tribunal's finding becomes untenable.
¶ 52. Attorney AAA relies on Emmons, Williams, Mires, & Leech v. State Bar of California, 6 Cal.App.3d 565, 86 Cal.Rptr. 367, 372 (1970) for the proposition that the policies behind prohibiting fee sharing are not obscure: prohibited fee splitting "poses the possibility of control by the lay person, interested in his own profit rather than the client's fate." Other dangers are also present, primarily the danger of a lay person not only invasively soliciting clients on a lawyer's behalf, but also referring the client to the highest bidder.
¶ 53. Attorney AAA argues that the evidence in this case is conclusive that Attorney AAA knew Everlina Jones through his work with a community agency prior to her hiring him. LeFlore did not solicit Jones, nor does he work for other lawyers. Hence the primary policy consideration here is whether there was a possibility that LeFlore, given his heavy involvement in the case, so controlled the case that he was looking after his own profit, rather than the lawyer's client's best interest.
¶ 54. Further, Attorney AAA argues that Rule 5.4 only forbids the sharing of fees, it does not require a lawyer to pay the lawyer's employees on a fixed basis. Attorney AAA and LeFlore testified that appellant disbursed $3000 to LeFlore from the proceeds of the Jones settlement in satisfaction of amounts due LeFlore. The amount represented the firm's catching up with LeFlore's salary and other amounts owed him.
¶ 55. Finally, Attorney AAA argues that the Bar had access to the accounts and others from appellant's practice, and failed to produce any evidence of a tacit agreement which gives rise to the inference that no such evidence exists. From this Attorney AAA argues that the Court should reverse and render the Tribunal's holding that he violated Rule 5.4, MRPC.
¶ 56. The Bar submits that the settlement statement (Exhibit 2) reflects that Attorney AAA earned a $6,000 attorney fee for his representation of Everlina Jones and the two checks issued on the same date, said being December 18, 1992, prepared by LeFlore in equal amounts of $3,000, (Exhibits 3 and 31), created the very strong presumption that Attorney AAA shared his attorney fee with a nonlawyer in violation of Rule 5.4(a), MRPC. Further the Bar contends that exhibits 2, 3 and 31 convinced the Tribunal and has equally convinced this Court that Attorney AAA did share the $6,000 he received as an attorney fee for his representation of Jones.
¶ 57. Rule 5.4 (a), MRPC, provides that a lawyer or law firm shall not share legal fees with a non-lawyer, except that: (1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons; (2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate *305 of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and (3) a lawyer or law firm may include non-lawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement.
¶ 58. From the record, it comes down to a question of what to believe, the testimony of Attorney AAA and LeFlore with a blanket denial of sharing fees or the evidence presented i.e. the check written out to LeFlore representing half of the settlement proceeds of the Jones case. The check written to LeFlore was issued on the same date the attorney fee for representation of the case issued. In the memo portion of the check for $3,000 written to LeFlore the notation "fee Everlina Jones" appears. The attorney fee in the case amounts to $6,000 which is evidenced in the settlement statement. There was sufficient evidence for the Tribunal to find that Attorney AAA had shared fees in the Jones case. This Court finds that the Tribunal did not err in finding that Attorney AAA violated Rule 5.4, MRPC.

V. WHETHER THE SANCTIONS IMPOSED, A ONE-YEAR SUSPENSION, WITH REINSTATEMENT CONDITIONED UPON APPLICATION THEREFOR, TAKING AND PASSING THE MULTI-STATE ETHICS EXAMINATION, WERE PROPORTIONAL UNDER THE CIRCUMSTANCES WHERE THE LAWYER'S EMPLOYEE, WITHOUT THE LAWYER'S KNOWLEDGE, ADVANCED SMALL SUMS TO A CLIENT.
¶ 59. Attorney AAA relies on Pitts v. Mississippi Bar, 462 So.2d 340 (Miss. 1985), for the proposition that this Court has always applied a proportionality requirement to Bar discipline cases. Attorney AAA contends that the small loans to Jones and paying an employee an amount equaling half of a fee were not accompanied by the serious harm for which a yearlong suspension has usually been applied. Attorney AAA argues that one-year suspensions have been reserved for instances where some form of dishonesty has significantly harmed the client, or consisted of a fraud on a court, or both. Mathes v. Mississippi Bar, 637 So.2d 840 (Miss.1994); Harrison v. Mississippi Bar, 637 So.2d 204 (Miss.1994) ("continuous course of dishonesty" to court and third parties); Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss.1993) (intentional misrepresentation to party and court concerning autopsy); Underwood v. Mississippi Bar, 618 So.2d 64 (Miss.1993) (intentional misrepresentations of settlements to clients). From these cases, Attorney AAA asserts that the Tribunal's imposition of a one-year suspension was an improper sanction and disproportionate to the actual harm produced by his infractions. Attorney AAA asserts that proportionality suggests that he should be privately reprimanded should the Court not strike down Rule 1.8(e).
¶ 60. The Bar contends that the current disciplinary system has been in place so long that it is without question that this Court has inherent and exclusive jurisdiction over attorneys and their licenses to practice law. The Bar relies on Goeldner v. Mississippi State Bar Association, 525 So.2d 403, 407 (Miss.1988) for the proposition that there is no set standard as to what punishment for particular misconduct ought to be. The Bar asserts that this Court should accord deference to the Tribunal's findings since the Tribunal had the exclusive opportunity to observe the witnesses at trial.
¶ 61. The Bar agrees with Attorney AAA that the sanction should be proportionate to the violations of the rules of professional conduct involved, after consideration of the relevant aggravating factors are considered. Finally, the Bar asserts that it is clear that each case is decided on its own merits, after purposes of the disciplinary process and the applicable disciplinary factors are considered.
*306 ¶ 62. This Court is free to evaluate the discipline imposed on an attorney and on review modify punishment as needed to best serve the interests of the Bar and the public. Parrish v. The Mississippi Bar, 691 So.2d 904, 907 (Miss.1996); Mississippi State Bar v. Blackmon, 600 So.2d 166, 173(Miss.1992).
In determining what discipline, if any, is appropriate we look to several factors. These factors include: (1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; and (5) the sanctions imposed in similar cases. Additionally the ABA has approved a set of standards for imposing lawyer sanctions which includes the following factors a court should consider when imposing sanctions: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.
Id. at 173.
¶ 63. Here Attorney AAA's misconduct of failing to properly supervise his employee and fee sharing with a non-lawyer is not sufficient to support imposition of the original sanction imposed by the Bar because that sanction in addition to those we have now found to be valid, was based on other charges of which this Court has determined that Attorney AAA is not in violation. The punishment should be modified. This Court has stated in the past that "the most important consideration in imposing sanctions is that the punishment be sufficient `to vindicate in the eyes of the public the overall reputation of the Bar.'" Parrish, 691 So.2d at 907; Terrell v. The Mississippi Bar, 662 So.2d 586, 593 (Miss. 1995). Therefore, Attorney AAA is privately reprimanded for his conduct.

CONCLUSION
¶ 64. The ruling of the Tribunal finding that appellant violated Rules 1.8(e) and 1.8(a), MRPC, is reversed. However, the finding that appellant failed to properly supervise his employee and shared legal fees with a non-lawyer is affirmed. The sanction imposed by the Bar is reversed and, based on our precedent cases modified to impose a private reprimand upon Attorney AAA.
¶ 65. AFFIRMED IN PART; REVERSED AND RENDERED IN PART. ATTORNEY AAA IS HEREBY PRIVATELY REPRIMANDED.
PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, MILLS AND WALLER, JJ., CONCUR.